BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: TIKTOK, INC. CONSUMER PRIVACY LITIGATION | MDL No. 2948 |

**DEFENDANT TIKTOK'S OPPOSITION TO PLAINTIFF AUSTIN RECHT'S MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-3)**

Defendant TikTok Inc. on behalf of itself and its affiliates (Bytedance Inc., et al.), which comprise all defendants named to date in the underlying civil actions, respectfully opposes the Motion to Vacate the Conditional Transfer Order ("CTO"), ECF No. 108 ("Mot."), filed by the plaintiff in the action styled *Recht v. TikTok Inc.*, No. 2:22-cv-08613 (C.D. Cal.). *See* Pl. and Movant Austin Recht's Mem. Supp. Mot. Vacate Conditional Transfer Order, ECF No. 108-1 ("Mem.").[1]

## INTRODUCTION

Mr. Recht's motion to vacate the order conditionally transferring his action to the *TikTok Inc. Consumer Privacy Litigation* relies on the fiction that the existing MDL (No. 2948) was confined to TikTok's alleged collection of biometric data. In fact, that MDL alleged, litigated, and settled claims relating to *all* data that TikTok was claimed to have improperly collected. Included among the specific categories of data

---

[1] Separately from his Motion to Vacate the CTO, Plaintiff Recht has also filed a motion to create a new MDL, MDL No. 3067. For the same reasons given herein to deny Plaintiff Recht's motion to vacate the Conditional Transfer Order, his motion to create new MDL No. 3067 should likewise be denied.

at issue in the MDL was users' internet browsing histories—i.e., the issue at the center of Mr. Recht's newly filed case. This substantial overlap is reason enough to deny his request for vacatur, as the Panel has consistently disfavored carving duplicative MDLs out of existing MDLs.

But the problems with Mr. Recht's motion run much deeper. Although he claims his action is unbound by the Settlement Agreement approved by the transferee court in this MDL (*In re TikTok Inc. Consumer Privacy Litigation*), that Agreement explicitly released any claims—including Mr. Recht's—arising from or related to "the collection and use of ***any*** user data." Mot. Prelim. Approval Ex. A, Proposed Settlement Agreement and Release § 2.30, *In re TikTok, Inc., Consumer Priv. Litig.* (N.D. Ill. Feb. 25, 2021), ECF No. 122-1 ("Settlement Agreement") (emphasis added). And the release clause extends to unknown, unasserted claims, while waiving the right to bring any future actions based on additional facts that might come to light. Beyond those dispositive features of the Settlement Agreement, the transferee court also enjoined further litigation on the released claims and retained jurisdiction over the interpretation and enforcement of the agreement. That, too, is dispositive of Mr. Recht's request for vacatur.

Facing those realities, Mr. Recht tries to salvage his break-away MDL by misrepresenting the scope of the settlement class and the adequacy of the settlement notice in the existing MDL. The thrust of both misrepresentations is the same: that only people who created videos were class members in the *TikTok Inc. Consumer Privacy Litigation*, or that the notice could be read to suggest as much. But this

argument is refuted by Mr. Recht's own evidence submitted with his motion. Equally unavailing is Mr. Recht's claim that party convenience favors his bid to vacate transfer to the existing MDL. In fact, the Panel already rejected those issues when it centralized this MDL in the Northern District of Illinois back in 2020, and Mr. Recht offers nothing that changes the analysis, let alone warrants vacatur.

The Panel should thus deny Mr. Recht's motion to vacate the conditional transfer order.

## ARGUMENT

### I. MDL NO. 2948 ENTIRELY ENCOMPASSES THE *RECHT* ACTION

Like his motion to create a new MDL, Mr. Recht's motion to vacate the order conditionally transferring his case to MDL 2948 is riddled with inaccuracies and misrepresentations. The facts confirm that Plaintiff Recht's case (and all newly filed copycat cases) are encompassed within—and enjoined by—this existing MDL.

Perhaps hoping that naming things will make them so, Mr. Recht creates a misnomer for MDL 2948, which he refers to as the "*Biometric Data* MDL" throughout his briefing. *E.g.*, Mot. at 1. But in fact, MDL 2948 was broadly and properly named by the Panel "*In re TikTok Inc. Consumer Privacy Litigation*" because the claims at issue concerned *all* user data that TikTok allegedly collected without sufficient notice and consent. Indeed, as is apparent from the Consolidated Class Action Complaint in MDL No. 2948, the plaintiffs alleged that *biometric data was just one of more than 18 different types of data* that TikTok collected through its app allegedly without sufficient notice and consent. Consolidated Am. Compl. ¶ 156, *In re TikTok, Inc.,*

*Consumer Priv. Litig.*, No. 1:20-cv-04699 (N.D. Ill. Dec. 18, 2020), ECF No. 114. They further alleged that "[t]he TikTok App secretly collects data far beyond what Defendants disclose to users," including "internet browsing history." *Id.* ¶ 167.

The alleged use of the app to collect users' internet activity on third-party websites without sufficient notice and consent is the identical factual predicate as Mr. Recht's theory of the case, the "crux" of which he describes as TikTok collecting "personal activity on third-party websites" through the in-app browser without sufficient notice and consent from class members. Mem. at 3. Mr. Recht strains to differentiate his theory from MDL 2948, which addressed *all* user data collected through the app. *Id.* at 2-3. But he ignores the obvious: the in-*app* browser is part of the *app*. As such, his repeated claim that there are "no overlapping facts" is demonstrably false, *id.* at 14, and the overlap between MDL 2948 and Recht's action requires denial of his motion to vacate, *see, e.g.*, *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, 2019 U.S. Dist. LEXIS 129695, at *1, *3 (J.P.M.L. Aug. 2, 2019) (denying motions to vacate orders conditionally transferring actions and denying an attempt "to create a new MDL" because, despite "some variances," the newly filed actions "share[d] a factual core" with an existing MDL).

For these reasons, the Panel should reject Mr. Recht's attempt to break away from MDL No. 2948 and re-litigate the same core facts in a separate MDL. The Panel disfavors such attempts to create multiple MDLs if doing so "would result in unnecessary duplication." *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1393 n.5 (J.P.M.L. 2018); *accord In re Juul Labs, Inc., Mktg., Sales*

*Pracs., & Prods. Liab. Litig.*, 396 F. Supp. 3d 1366, 1367 (J.P.M.L. 2019) ("The proposal to create two MDLs is not well-taken. Given the substantial overlap in the core factual issues, parties, and claims, a single MDL will best achieve Section 1407's purposes."); *In re Frito-Lay N. Am., Inc. "All Natural" Litig.*, 908 F. Supp. 2d 1379, 1379-80 (J.P.M.L. 2012) (rejecting request "that the Panel should create two MDLs" because "the transferee judge may account, at her discretion, for any differences among the actions through the use of appropriate pretrial devices, such as separate tracks for discovery or motion practice").

Indeed, even in circumstances where the relation between the new and existing actions was much more remote, the Panel has rejected attempts to carve out a new MDL from an existing MDL. *In re Infants Born Opioid-Dependent Prods. Liab. Litig. ("Opioid Litig.")*, 350 F. Supp. 3d 1377, 1379 (J.P.M.L. 2018) (declining to create a new MDL focused on opioid-addicted infants given existing MDL regarding the improper marketing and inappropriate distribution of opioids more generally). The duplication urged by Mr. Recht is "at odds with Section 1407's mandate that centralization 'promote the just and efficient conduct of [the involved] actions.'" *Id.* (quoting 28 U.S.C. § 1407(a)).

As its name suggests, the *TikTok Consumer Privacy Litigation* examined all aspects of consumer privacy with respect to the TikTok app. Although biometric data featured prominently, that was due to the press drawing parallels between MDL 2948 and a landmark case asserting claims under the Illinois Biometric Information Privacy Act ("BIPA") against Facebook. *See In re Facebook Biometric Info. Priv. Litig.*,

522 F. Supp. 3d 617, 621-29 (N.D. Cal. 2021). It was also driven by financial rather than substantive reasons, as BIPA imposes $5,000 statutory damages per class member and threatened total damages of about $7,000,000,000 given the class size. *See* 740 Ill. Comp. Stat. 14/20. That figure understandably commanded much of the parties' attention, especially given that the BIPA case involving Facebook settled for over half a billion dollars. *See In re Facebook*, 522 F. Supp. 3d at 621-29. The record is nonetheless clear that MDL 2948 alleged, litigated, analyzed, and settled claims for TikTok's collection of users' internet browsing data (among many other categories of data). Plaintiff Recht's revisionist attempt to confine *TikTok Consumer Privacy Litigation* to biometrics ignores that reality.

While Mr. Recht's case does not focus on biometrics, the law is clear that "Section 1407 does not require a complete identity or even majority of common factual and legal issues." *Opioid Litig.*, 350 F. Supp. 3d at 1379 n.5; *cf. In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, — F. Supp. 3d —, 2021 U.S. Dist. LEXIS 21511, at *3 (J.P.M.L. Feb. 4, 2021) ("MDLs can naturally expand to encompass other claims involving the products at issue and presenting similar factual questions.").

His motion to vacate the CTO should therefore be denied.

## II. THE SETTLEMENT AGREEMENT IN MDL NO. 2948 BARS THE *RECHT* ACTION

The breadth of the claims litigated in MDL 2948 is reflected in the parties' Settlement Agreement, which is in no way limited to biometric data. Recognizing that the claims asserted in the complaint covered the collection of any user data without proper disclosure and consent, the Settlement Agreement likewise released claims

"arising from or related to . . . the collection and use of *any* user data." Mem. Op. & Order at 12 n.6, *In re TikTok, Inc., Consumer Priv. Litig.*, No. 1:20-cv-04699 (N.D. Ill. July 28, 2022), ECF No. 261 (emphasis added); *see also* Settlement Agreement § 2.30. And the Settlement Agreement made clear that, in negotiating its terms, "[t]he Parties jointly reviewed *multiple categories of user data* potentially in TikTok's possession that should be deleted from TikTok's servers." Settlement Agreement § 4.2 (emphasis added).

The Settlement Agreement forecloses Mr. Recht's case. Mem. at 5-6 (explaining that his claims "arise from Defendants' use of an in-app browser to secretly intercept personal information and data during users' communications with third-party websites"). Looking for a way out, he argues that his case revives the already-settled MDL 2948 because it asserts different *causes of action* that rely on new research. Mem. at 5-7. And he claims that "[n]othing in the *Biometric Data* MDL [*sic*] indicates those plaintiffs were aware of, or based their claims on," his new research.[2] Mot. at 2.

All of that is irrelevant. The Settlement Agreement includes a release clause that expressly covers: "[C]laims . . . of any kind, whether known *or unknown* . . .

---

[2] Mr. Recht concedes that the Settlement Agreement provided remedies related to the collection of several categories of data beyond biometrics. Mem. at 10 (listing data subject to injunctive relief: GPS data, clipboard data, pre-uploaded data, etc.); *see also* Settlement Agreement § 6.1. The only reason that internet browsing data was not included in the Settlement Agreement's list was that, after discovery, the parties and the court recognized that TikTok's privacy policy expressly disclosed the collection of "browsing and search history (including content you have viewed in the [App])." Mem. Op. & Order at 50-51 & n.26, *In re TikTok, Inc., Consumer Priv. Litig.*, No. 1:20-cv-04699 (N.D. Ill. July 28, 2022), ECF No. 261.

arising from or related to the Civil Actions or the collection and use of any user data . . . whether in law or in equity, under . . . any other subject area, or under any statute, rule, regulation, order, or law, whether federal, state, or local, on any grounds whatsoever . . . that were, *could have been, or could be asserted* by the Releasing Parties." Settlement Agreement § 2.30 (emphasis added).

Thus, even if Mr. Recht's asserted causes of action and evidence in support thereof were truly distinct from those litigated in MDL 2948, he cannot crack open the Settlement Agreement's release clause because it covers both unknown and unasserted claims. It is blackletter law that "a release incorporated into an order approving a class action settlement bars subsequent litigation based on the released claims," *Tropp v. W.-Southern Life Ins. Co.*, 381 F.3d 591, 596 (7th Cir. 2004), and that holds true even where "the claim was not presented and might not have been presentable in the class action," *Schulte v. Fifth Third Bank*, No. 09-6655, 2012 U.S. Dist. LEXIS 82790, *4-10 (N.D. Ill. June 15, 2012) (enforcing class settlement agreement's "broad release" where subsequent litigation sought to bring claims that "were previously litigated, settled, and released"); *see also In re VMS L.P. Sec. Litig.*, No. 90-2412, 1995 U.S. Dist. LEXIS 16921, *8 (N.D. Ill. Nov. 9, 1995) (enforcing class settlement agreement's release clause that covered "unknown claims"; "There is no barrier to such releases even if they encompass claims broader than those plead in the complaint so long as the release is clear and part of a just settlement.").

The release clause expressly waives claims based on evidence that might be discovered after the Settlement Agreement: "Plaintiffs' Releasing Parties

acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any unknown claims they may have." Settlement Agreement § 12.3. Courts routinely give effect to such clauses and dismiss claims based on facts discovered after a plaintiff has entered into a settlement agreement. *See, e.g.*, *Skilstaf, Inc. v. CVS Caremark Corp.*, No. 09-02514, 2010 U.S. Dist. LEXIS 2662, *18 (N.D. Cal. Jan. 13, 2010) (enforcing covenant not to sue in class-settlement agreement by dismissing claims brought by plaintiff in later-filed action), *aff'd*, 669 F.3d 1005 (9th Cir. 2012).

Consequently, despite Mr. Recht's argument that "allegations involving TikTok's use of an in-app browser to track user activity on third party websites" were not raised in MDL 2948 (Mem. at 3), that is irrelevant under the plain terms of the Settlement Agreement (§§ 2.30, 12.3). It is also wrong. In fact, plaintiffs in MDL 2948 tasked an expert with examining the TikTok app and code to look for precisely the sort of data-privacy issues asserted in Mr. Recht's complaint. Plaintiffs' expert presumably found *nothing* regarding the tracking of keystroke data, otherwise that issue would have been raised by the plaintiffs in that action.[3] Regardless, any claims seeking to relitigate those issues are plainly barred by the Settlement Agreement.

---

[3] There is good reason to doubt the veracity of Mr. Recht's newly discovered "facts." By his own admission, his case is "founded on information" in a report by Felix Krause dated August 18, 2022 claiming that TikTok had the ability to track keystroke data. Mem. at 2. But Mr. Recht fails to mention that, as *Forbes* reported just months later, "there is no evidence [that] TikTok is actually doing so." *See* Richard Nieva & Thomas

## III. THE *RECHT* ACTION VIOLATES THE COURT'S INJUNCTION

Mr. Recht next argues for vacatur on the ground that MDL 2948 is "already settled and terminated." Mem. at 10-11. But that cuts *against*, not *for*, vacatur, as the transferee court retained "continuing jurisdiction over matters relating to the Settlement, including, without limitation, the administration, interpretation, effectuation and/or enforcement of the Settlement, the Settlement Agreement, and this Final Order and Judgment." Order & Final J. ¶ 27, *In re TikTok, Inc., Consumer Priv. Litig.*, No. 1:20-cv-04699 (N.D. Ill. Aug. 22, 2022), ECF No. 264. Moreover, Mr. Recht's duplicative action violates the injunction in the transferee court's Order and Final Judgment, which prohibits further litigation of claims covered by the Settlement Agreement:

> No Further Litigation. All members of the Class who did not make a valid request for exclusion in the time and manner provided in the Class Notice, or as otherwise set forth in the Final Approval Order, are barred from commencing or prosecuting any action, suit, proceeding, claim or cause of action in any jurisdiction or court against Defendants' Released Parties based upon, *relating to, or arising out of, any of the Released Claims* [e.g., those related to the collection and use of any user data].

*Id.* ¶ 24 (emphasis added).

There can be no doubt that it is for the transferee court to interpret and enforce its injunction.[4] *See id.* ¶¶ 24, 27. In analogous circumstances, the Panel emphatically

---

Brewster, *Lawmakers Press Apple and Google Over TikTok's Keystroke Tracking Ability*, Forbes, Nov. 4, 2022, https://www.forbes.com/sites/richardnieva/2022/11/04/lawmakers-letter-apple-google-tiktok-keystroke-tracking/?sh=5ec8859d41a6.

[4] Indeed, even if centralization under 28 U.S.C. § 1407 were not at issue, Mr. Recht's case (together with all the other tag-along actions) would be susceptible to dismissal or transfer to the Northern District of Illinois under these provisions of the transferee

rejected a faction of plaintiffs' "extraordinary request" to create a new MDL that consisted of exclusions and opt-outs from settlements that were approved in an existing MDL. *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 961 F. Supp. 2d 1355, 1356-57 (J.P.M.L. 2013). There, the Panel found that "[r]ather than serve Section 1407's purposes, the proposed new MDL would subvert them." *Id.* The subversion would be run even deeper here. Whereas the break-away faction in *Deepwater Horizon* comprised those *excluded* from settlements for one reason or another, here Mr. Recht *remains bound* by the settlement approved by a transferee court that (1) expressly released the very claims he brings, (2) expressly prohibited further litigation on those released claims, and (3) expressly retained jurisdiction over the interpretation and enforcement of points 1 and 2 (i.e., the release and prohibition).

Mr. Recht nonetheless complains that he will somehow be "severely prejudice[d]" if the Panel transfers his case to the existing MDL where it belongs. Mem. at 2. There is absolutely no prejudice. As explained above, whether Mr. Recht's case is barred by the Settlement Agreement must be decided by the transferee court. And if that court determines that any portion of his claim is not so barred, then it can proceed to adjudicate them just the same as it could any other claims. Mr. Recht will be none the worse in that unlikely scenario.

---

court's Order and Final Judgment. Mem. Op. & Order at 50-51 & n.26, *In re TikTok, Inc., Consumer Priv. Litig.*, No. 1:20-cv-04699 (N.D. Ill. July 28, 2022), ECF No. 261.

## IV. MR. RECHT'S MOTION MISREPRESENTS THE SETTLEMENT AGREEMENT AND THE SETTLEMENT NOTICE

Mr. Recht tries to salvage his break-away MDL by misrepresenting the scope of the settlement class and the adequacy of the settlement notice in the existing MDL. The thrust of both misrepresentations is the same: (1) that only people who created videos were class members in the *TikTok Inc. Consumer Privacy Litigation*, or (2) that the notice could be read to suggest as much. Both arguments are refuted by Mr. Recht's own evidence submitted with his motion.

First, the nationwide class in the Settlement Agreement comprises "[a]ll persons who reside in the United States who used the App—the TikTok video sharing application (or its Musical.ly predecessor) distributed in the United States—prior to September 30, 2021." Order & Final J. ¶ 2, *In re TikTok, Inc., Consumer Priv. Litig.*, No. 1:20-cv-04699 (N.D. Ill. Aug. 22, 2022), ECF No. 264; *see also* Mem. at 8 n.23 (quoting this same language). It is not limited in any way to only those who created videos. In Mr. Recht's telling, however, the nationwide settlement class was limited to "persons who used the video-sharing functions of the TikTok application." Mem. at 8; *see also id.* at 12 ("[T]he certified settlement classes *only* included users who used TikTok as a video sharing application." (emphasis added)). Mr. Recht suggests that the phrase "video sharing" distinguishes between users of the app (i.e., separating those who "used the video-sharing functions" from those who did not). *See* Mem. at 8. That is wrong, and a simple reading of the transferee court's Order and Final Judgment—and of Mr. Recht's own footnote—disproves this claim. It cannot be

seriously disputed that the nationwide settlement class encompasses *all* U.S. users of the TikTok app, including Mr. Recht.

Second, and just as unavailing, is Mr. Recht's argument that the settlement notice in the *TikTok Consumer Privacy Litigation* somehow failed to inform all U.S. users of the app that they were class members. Mem. at 12-13. Mr. Recht's support for this claim is an excerpt of the notice, which states in large, bold letters: "**If you and/or your minor child used TikTok and/or Musical.ly application, You May Be Entitled to a Payment from a Class Action Settlement**." Mem. at 12. Then, in smaller font, the excerpt broadly defines the allegations being settled as TikTok's alleged collection of "personal data in connection with [class members'] *use* of the [TikTok app]"—regardless of which app features class members may have used. *Id.* (emphasis added). It is thus obvious that the class was, without qualification, all U.S. users of the TikTok app. Recht tries to narrow the notice; seizing on a stray phrase that defines the app—*not* the class—as the "the TikTok – Make Your Day video-sharing application," he claims that a class member "would reasonably interpret" the notice to exclude activities related to the in-app browser. Mem. at 13. That tortured reading fails to persuade.

Mr. Recht again opts for misdirection by including a screenshot of the settlement claim form that pertains to the *Illinois subclass*, rather than the *nationwide* class. *Id.* While the *Illinois subclass* was indeed limited to those who used the TikTok app to create videos, the *nationwide* class was not so limited. Order &

Final J. ¶ 2, *In re TikTok, Inc., Consumer Priv. Litig.*, No. 1:20-cv-04699 (N.D. Ill. Aug. 22, 2022), ECF No. 264.

In sum, Mr. Recht's attempt to use various screenshots to gin up a dispute regarding the scope of the release and the adequacy of the notice only distracts from the single issue before the Panel: Do Recht's claims overlap with the claims at issue in the *In re TikTok Inc. Consumer Privacy Litigation*? They do. In fact, they are completely subsumed within the settlement and release in that MDL. *See supra* Section I. That is dispositive of his request for vacatur.

## V. THE PARTY CONVENIENCE FACTOR WAS ALREADY WEIGHED WHEN THE PANEL CREATED THIS MDL

Finally, Mr. Recht argues that party convenience favors centralizing his dispute in the Central District of California. Mem. at 15-17. But the issue of party convenience was decided back in 2020 when the Panel centralized *In re TikTok, Inc., Consumer Privacy Litigation* in the Northern District of Illinois, despite that several actions had been filed in California. 481 F. Supp. 3d 1331, 1332 (J.P.M.L. 2020). Mr. Recht cites no authority for the proposition that this issue ought to be relitigated on account of his duplicative action, much less that an altered reckoning of party convenience can serve as grounds for vacating an order conditionally transferring his action. *See* Mem. 15-17. If that were the rule, every tag-along plaintiff could well argue that the transferee venue is less convenient than the district in which they opted to sue. No vacatur of a conditional transfer order is warranted on this ground.

That is especially true here, where Mr. Recht's argument focuses on where *TikTok* is located. *Id.* As the Panel reasoned when it selected the Northern District of

Illinois, "although common defendants ByteDance, Inc., and TikTok, Inc., are headquartered in California, they support selection of the Northern District of Illinois, as do multiple plaintiffs." *In re TikTok*, 481 F. Supp. 3d at 1332. Mr. Recht offers nothing that changes the Panel's prior analysis.

## CONCLUSION

Mr. Recht's Motion to Vacate the Conditional Transfer Order should be denied, and his action—together with the other newly filed actions—should be transferred to existing MDL No. 2948.

Respectfully submitted,

DATED: January 24, 2023

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: */s/Anthony J Weibell*
Anthony J Weibell

*Lead Counsel for all Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2023, the foregoing document was filed electronically through the Court's Electronic Case Filing System. Service of this document is being made upon all counsel of record in this case by the Notice of Electronic Filing issues through the Court's Electronic Case Filing System on this date.

*/s/Anthony J Weibell*
Anthony J Weibell