BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: TIKTOK, INC., CONSUMER PRIVACY LITIGATION | MDL Docket No. 2948 |

**PLAINTIFF AND MOVANT AUSTIN RECHT'S REPLY IN SUPPORT OF MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-3)**

Pursuant to Panel Rule 7.1(f), Plaintiff and Movant Austin Recht ("Movant") respectfully submits this Reply in Support of his Motion to Vacate Conditional Transfer Order ("CTO-3") as it relates to *Austin Recht v. TikTok Inc., et al.*, No. 2:22-cv-08613-MEMF-AGR (C.D. Cal. Nov. 25, 2022) (the "*In-App Browser* Action"), and relevant to the 12 other newly-filed related cases.[1]

**I.    INTRODUCTION**

Stripped of its rhetoric, Defendants' Opposition rests entirely on the unsupported claim that the now-terminated *Biometric Data* MDL, MDL No. 2948, shares the "same factual core" as the *In-App Browser* Action, MDL No. 3067. Defendants repeatedly frame the *Biometric Data* MDL as litigating and disposing of "all aspects of consumer privacy," without supportive citations to the complaint (or anything else), and without acknowledging that the two cases lack common questions of fact within the meaning of 28 U.S.C. § 1407. Indeed, while Defendants do their best to misinterpret the pleadings in the *Biometric Data* MDL, they ignore the filing of an

---

[1] Since the issuance of CTO-3, there are now 12 additional "in-app browser" cases filed throughout the country. The related "in-app browser" cases assert essentially the same claim—that Defendants' secretly intercepted and monitored TikTok users' activity on third-party websites without the necessary consent. Movant has filed a Motion to Transfer all these related cases to the Central District of California for coordinated pretrial proceedings.

1

*In-App Browser* action by members of plaintiffs' Court-appointed leadership team in the *Biometric Data* MDL.  *See Rahn v. TikTok, Inc. et al.*, Case No. 1:2022-cv-07256.  Those lawyers were responsible for preparing the operative pleadings in the *Biometric Data* MDL and were privy to the facts and claims underlying the *Biometric Data* MDL as well as the settlement negotiations that yielded the *Biometric Data* MDL settlement.  And yet they determined that their newly filed *In-App Browser* action is unrelated to the *Biometric Data* MDL and warrants a new MDL.[2]

Additionally, Defendants attempt to invoke the terms of the *Biometric Data* MDL settlement agreement as a basis to dismiss the *In-App Browser* actions, but they fail to explain why any such dispositive motion could not be filed in the Central District of California after consolidation has been granted.  Mere mention of the *Biometric Data* MDL settlement does not – as Defendants suggest – require a transfer to the Northern District of Illinois for adjudication.

Simply put, there is no good cause to maintain CTO-3 and Movant accordingly respectfully requests that CTO-3 be vacated.

**II.     ARGUMENT**

    **A.     There Are No Common Questions of Fact or Law.**

The *In-App Browser* Action and the *Biometric Data* MDL contain materially different claims and allegations.  At its core, the *In-App Browser* Action concerns TikTok's ongoing, secret, and dynamic data harvesting efforts that occur while users access third-party websites.  Whereas the core of the *Biometric Data* MDL – as this Panel found – concerns the scanning, capture, retention, and dissemination of the facial geometry and other biometric information of

---

[2] *See*, MDL No. 3067, ECF No. 19 (Plaintiff Rahn's Response to Motion to Transfer).

the app users.[3]  Neither case involves common questions of fact within the meaning of Section 1407(a); indeed, the core legal claims asserted in the *In-App Browser* actions are violations of federal and state wiretapping statutes **which were not asserted** in the *Biometric Data* MDL. Undeterred, Defendants claim that the *Biometric Data* MDL subsumed and included every facet of "user data," without regard for what was actually alleged and litigated in the *Biometric Data* MDL.

For instance, Defendants claim the *Biometric Data* MDL "addressed *all* user data collected through the app,"[4] and "examined *all* aspects of consumer privacy."[5]  Defendants provide no citations or other actual authority for these statements.  Instead, Defendants point to the fact that the *Biometric Data* MDL plaintiffs alleged that "biometric data was just one of more than 18 different types of data that TikTok collected through its app."[6]  But Defendants do not claim – nor can they – that any of the 18 discrete types of data at issue in the *Biometric Data* MDL concern the dynamic data harvesting of user activity **on third-party websites**.

Defendants desperately note that the *Biometric Data* MDL complaint referenced "internet browsing history" as a form of secret data collection.[7]  But this attempt to conflate "internet browsing history" collected on the TikTok app with data harvesting activities collected on third-party websites, is misleading.  Data concerning "internet browsing history" is a static and stored record of the websites a TikTok user previously visited at a certain point in time.  But TikTok's

---

[3] *See In re TikTok, Inc., Consumer Privacy Litig*., 481 F. Supp. 3d 1331, 1331 (J.P.M.L. 2020) (consolidating all actions in which plaintiffs "challenge defendants' conduct with respect to the scanning, capture, retention, and dissemination of the facial geometry and other biometric information of users of the app.").
[4] Defendants' Opposition (ECF No. 129), at 4 (emphasis in original).
[5] *Id*., at 5 (emphasis added).
[6] *Id*., at 3.
[7] *Id*., at 4.

harvesting of user activity from third-party websites involves an active and real-time keystroke monitoring scheme implemented **when users believe they have left the TikTok app entirely**.

Against this backdrop, the cases Defendants cite to support their position are inapposite. Defendants cite *In re Nat'l Prescription Opiate Litig.*, for instance, for the proposition that motions to vacate are properly denied when newly filed actions "share[d] a factual core."[8] That proposition is in accord with Movant's position, as the *In-App Browser* Action and the *Biometric Data* MDL share no factual core, and assert critically unique facts, claims, allegations, and causes of action.

Defendants next point to *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1393 (J.P.M.L. 2018) as an example of the Panel disfavoring multiple MDLs that "would result in unnecessary duplication."[9] In *Aqueous Film*, the plaintiffs sought to differentiate litigation of commercial aqueous foams from certain military-spec foams, but the Panel noted it had already rejected similar claims to cabin the MDL to certain military-spec foams.[10] Here, the opposite is true. The Panel has already cabined the *Biometric Data* MDL and its related tag-along actions as challenges to "defendants' conduct with respect to the scanning, capture, retention, and dissemination of the facial geometry and other biometric information of users of the app."[11] The *In-App Browser* Action, on the other hand, involves real-time keystroke monitoring and data harvesting efforts that occur while users access third-party websites.

Defendants next rely on *In re Frito-Lay N. Am., Inc. "All Natural" Litig.*, 908 F. Supp. 2d 1379, 1379-80 (J.P.M.L. 2012) as precedent to transfer the *In-App Browser* Action to the

---

[8] *Id.*, at 4.
[9] *Id.*
[10] *In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, *2-3 (J.P.M.L. 2018).
[11] *In re TikTok, Inc., Consumer Priv. Litig.*, 481 F. Supp. 3d 1331, 1332 (J.P.M.L. 2020).

*Biometric Data* MDL.[12]  Defendants quote the reasoning in *Frito-Lay* to argue the formation of two MDLs is inappropriate when "the transferee judge may account, at her discretion, for any differences among the actions through the use of appropriate pretrial devices, such as separate tracks for discovery or motion practice."[13]  This reasoning only supports and underscores Movant's position.  **Given the *Biometric Data* MDL is now settled and terminated, there are no options for any pretrial devices like separate tracks for discovery or motion practice to accommodate the claims, allegations, and discovery needs of the *In-App Browser* Action**.

Defendants' reliance on *In re Infants Born Opioid-Dependent Prods. Liab. Litig.* ("Opioid Litig."), 350 F. Supp. 3d 1377 (J.P.M.L. 2018) is also inapposite.[14]  In that case, the Panel declined to create a new MDL because "[f]actual questions of the manufacturing and distributor defendants' knowledge of and conduct regarding the alleged diversion of prescription opiates, as well as the manufacturers' alleged improper marketing of such drugs, lie at the heart of each case now before us."[15]  Here, there is no commonality between the two cases regarding Defendants' knowledge and conduct.  Instead, the two cases assert Defendants' unique conduct and their knowledge of that conduct:  *i.e.*, the implementation and use of a third-party website data harvesting and keystroke monitoring tool in the *In-App Browser* Action on the one hand, and the scanning, capture, and retention of a TikTok user's biometric information in the *Biometric Data* MDL, on the other.  Defendants accordingly advance no facts and offer no viable authority to indicate the two actions share "common questions of fact" within the meaning of Section 1407(a).

---

[12] Defendants' Opposition (ECF No. 129), at 5.
[13] *Id*.
[14] *Id*.
[15] *Id*.

B.     **The *Biometric Data* MDL Settlement Does Not Bar The *In-App Browser* Action.**

Defendants next invoke the terms of the settlement agreement and the corresponding litigation injunction from the *Biometric Data* MDL in an attempt to bar Movant's *In-App Browser* Action entirely.[16] But, however misguided, any such attempt should be made after the *In-App Browser* Actions are consolidated in the Central District of California for further litigation.

1.     **The Panel Does Not Make Dispositive Merits Determinations in a Motion to Vacate a Conditional Transfer Order.**

As a threshold matter, the Panel does not typically make substantive assessments of the merits of a case when deciding a motion under Section 1407. *See In re: Paragard IUD Products Liability Litigation,* 510 F. Supp. 3d 1376 (J.P.M.L. 2020) (noting the Panel has "no authority" to assess whether plaintiff's claims fail as a matter of law); *see also In re Kauffman Mutual Fund Actions*, 337 F. Supp. 1337, 1339-40 (J.P.M.L. 1972) ("The framers of Section 1407 did not contemplate that the Panel would decide the merits of the actions before it and neither the statute nor the implementing Rules of the Panel are drafted to allow for such determinations."); *see also In re Air Crash over the Southern Indian Ocean, on Mar. 8, 2014*, 190 F. Supp. 3d 1358, 1360 (J.P.M.L. 2016) ("Plaintiffs are, to some extent, asking the Panel to pre-judge the merits of these actions – something we are neither authorized nor inclined to do.").

In *In re: Uber Technologies, Inc., Data Security Breach Litigation*, 304 F. Supp. 3d 1351 (J.P.M.L. 2018), the Panel acknowledged that an assessment of the merits of the actions were beyond the Panel's authority, and transferred the action to the Central District of California over the Northern District of Illinois, citing the fact that "California has a significant connection to

---

[16] *Id.*, at 6-11.

this litigation, as Uber technologies, Inc., has its headquarters in this state, where much of the common evidence, including witnesses, will be located." *In re: Uber Technologies, Inc., Data Security Breach Litigation*, 304 F. Supp. 3d 1351, 1353-1355 (J.P.M.L. 2018).  The same considerations are present here.

        2.        Dispositive Motions Relating to the *In-App Browser* Action May Be Brought in the Central District of California.

Defendants advance no compelling reasons why they cannot adjudicate the effect of the *Biometric Data* MDL settlement agreement in the Central District of California, after the cases are consolidated there.

First, the propriety of any future dispositive motion is not a determining factor under the Panel's Section 1407 analysis.  Rather, a Section 1407 analysis considers whether (1) common questions of fact exist, (2) transfer will promote the convenience of the parties and witnesses, and (3) transfer will promote the just and efficient conduct of the actions.[17]  As addressed in Movant's Motion, common questions of fact between the actions do not exist, transfer to the Northern District of Illinois will greatly inconvenience the parties and witnesses, and would not result in the just and efficient conduct of the actions.  Defendants do not offer any authority – nor can they – that simply invoking the settlement agreement of one action is a singular and overriding factor that trumps all other considerations in a Section 1407 analysis.

Second, whether the settlement agreement from the *Biometric Data* MDL applies to the *In-App Browser* Action at all is an issue that may properly be brought in the Central District of California.  Indeed, Judge Lee, who oversaw the settlement of the *Biometric Data* MDL in the Northern District of Illinois, is no longer assigned to that case.[18]  Instead, the *Biometric Data*

---

[17] *See* 28 U.S.C. § 1407(a).
[18] *Biometric Data* MDL, ECF No. 275 (Order Reassigning Litigation).

MDL is now assigned to the Honorable Rebecca R. Pallmeyer and Defendants do not suggest that Judge Pallmeyer possesses unique facts which requires her interpretation or adjudication of the *Biometric Data* MDL settlement agreement.

Third, Defendants' discussion of the settlement agreement loses on the merits, as it wholly ignores or sidesteps critical points raised in Movant's Motion. For instance, Defendants' reliance on the *Biometric Data* MDL settlement agreement is only as strong as the notice provided to potential class members of that action. The class notice and settlement claim forms in the *Biometric Data* MDL make no mention of TikTok's use of JavaScript code to secretly monitor user activity on third-party websites.[19] On the contrary, those forms specifically reference the video-sharing application and creation of videos while using the app.[20] Defendants also fail to address the fact that the injunctive relief that resolved the claims in the *Biometric Data* MDL completely omits any reference to conduct involving Defendants' real-time keystroke monitoring of user activity on third-party websites.[21] Not surprisingly then, Defendants continue to commit the specific wiretap violations and data mining activities alleged in the *In-App Browser* Complaint. Indeed, the *In-App Browser* Action's allegations of Defendants' improper and surreptitious use of JavaScript code continue well beyond September 30, 2021, the end of the class period applicable to the *Biometric Data* MDL settlement. Therefore, the *In-App Browser* Actions would receive no relief at all if transferred to the *Biometric Data* MDL and forced to subsume their claims into the now terminated *Biometric Data* MDL settlement.

---

[19] *See* Movant's Memorandum (ECF No. 108-1), at 12-13.
[20] *Id.*
[21] *Id.*, at 8-10.

### C. The Party Convenience Analysis Applied in the *Biometric Data* MDL Does Not Apply to the *In-App Browser* Action.

Pursuant to Section 1407(a), in order for transfer or consolidation to be appropriate, doing so must further "the convenience of the parties and witnesses." Movant's Motion details how the location of the Defendants, the In-*App Browser* class members, potential witnesses, and potential documentary evidence all militate toward a finding that the Central District of California is the most convenient forum to try that action.[22] Defendants do not dispute any of those points. It is not surprising, then, that **Defendants previously supported transfer of the *Biometric Data* MDL to California**. Defendants now suggest that because the Panel centralized the *Biometric Data* MDL in the Northern District of Illinois in 2020, that analysis should also apply to the *In-App Browser* Action.[23] The Panel's prior analysis, however, considered and relied on critical factors that do not exist in the *In-App Browser* Action.

In selecting the Northern District of Illinois as the transferee district of the *Biometric Data* MDL, the Panel described its reasons for doing so, including the fact that "[f]our of the ten actions, as well as three potential tag-along actions, are pending in the Northern District of Illinois, and have been proceeding in an organized fashion (for example, the actions have been consolidated, interim lead plaintiffs' counsel has been appointed, and a consolidated complaint has been filed)."[24] Unlike the *Biometric Data* MDL, the tag-along cases to the *In-App Browser* Action have not been "proceeding in an organized fashion" in the Northern District of Illinois with interim lead plaintiffs' counsel appointed, or even a consolidated complaint filed.

---

[22] *Id.*, at 15-17.
[23] *See* Defendants' Opposition (ECF No. 129), at 14-15.
[24] *In re TikTok, Inc., Consumer Priv. Litig*, 481 F. Supp. 3d 1331, 1332 (J.P.M.L. 2020).

The Panel in 2020 also relied on the fact that "The Honorable John Z. Lee, to whom we assign the litigation…is presiding over the related Northern District of Illinois actions, and has been actively managing them to date" so he may "steer this litigation on a prudent course."[25]  As noted above, Judge Lee is no longer presiding over the *Biometric Data* MDL.  Rather, on October 12, 2022, the Panel entered an Order reassigning the *Biometric Data* MDL to the Honorable Rebecca R. Pallmeyer.[26]

Finally, as articulated by the Panel in 2020, the cases were transferred to the Northern District of Illinois because "Plaintiffs in all actions challenge defendants' conduct with respect to the scanning, capture, retention, and dissemination of the facial geometry and other biometric information of users of the app."[27]  Neither Movant, nor any of the tag-along plaintiffs to the *In-App Browser* Action, make any such challenges.  Thus, transfer to the Northern District of Illinois for consolidation with the *Biometric Data* MDL would be inappropriate.

### III. CONCLUSION

Defendants offer no compelling reasons for the Panel to maintain CTO-3 and transfer the *In-App Browser* Action to the settled and defunct *Biometric Data* MDL.  On the contrary, none of the considerations of Section 1407(a) to warrant a transfer to the Northern District of Illinois exist here.  For the foregoing reasons, Movant respectfully requests the Panel vacate CTO-3.

Dated:   January 31, 2023

Respectfully submitted,

By:   /s/ Roland Tellis
Roland Tellis

BARON & BUDD, P.C.

---

[25] *Id.*
[26] *Biometric Data* MDL, ECF No. 275 (Order Reassigning Litigation).
[27] *In re TikTok, Inc., Consumer Priv. Litig.*, 481 F. Supp. 3d 1331 (J.P.M.L. 2020).

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Sterling Cluff (SBN 267142)
scluff@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Shannon Royster (SBN 314126)
sroyster@baronbudd.com
Jay Lichter (SBN 266960)
jlichter@baronbudd.com
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818-839-2333
Facsimile: 818-986-9698

*Counsel for Plaintiff and Movant
Austin Recht*

11